IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| SPEECH FIRST, INC.,<br>  *Plaintiff*<br><br>v.<br><br>BRIAN MCCALL, in his official capacity as Chancellor of the Texas State University System; KELLY DAMPHOUSSE, in his official capacity as President of Texas State University; ALEXANDRIA HATCHER, in her official capacity as Director of the Office of Equal Opportunity and Title IX for Texas State University; KEN PIERCE, in his official capacity as Vice President for Information Technology for Texas State University; DANIEL OWEN, in his official capacity as Chief Information Security Officer for Texas State University; EARL C. AUSTIN, GARRY D. CRAIN, ALAN TINSLEY, CHARLIE AMATO, SHIELA FASKE, DIONICIO FLORES, VERONICA HARLE, STEPHEN LEE, and WILLIAM F. SCOTT, in their official capacities as members of the Texas State University System Board of Regents,<br>  *Defendants,* | CIVIL ACTION NO. 1:23-CV-00411 |

### DECLARATION OF ALEXANDRIA J. HATCHER

Pursuant to 28 U.S.C. § 1746, I, Alexandria J. Hatcher declare the following:

1. I have personal knowledge, or knowledge based on my review of Texas State University business records, of all the facts contained in this declaration.

2. I am the Director of the Office of Equal Opportunity ("OEO") & Title IX Coordinator at Texas State University. I have held this role since February 2020. In this role, I oversee the development and implementation of UPPS No. 04.04.46 Prohibition of Discrimination, which includes a prohibition on discriminatory harassment. I am responsible for interpreting and applying this policy, including conducting the investigation and adjudication of potential policy violations. Prior to serving in this role, I served as Texas State's Deputy Title IX

        Coordinator from May 2018-May 2019. During this time, I also investigated and adjudicated potential policy violations under the Prohibition of Discrimination.

3. As OEO Director, it is my responsibility to review and revise the Prohibition of Discrimination, including the definition of discriminatory harassment, on a biannual basis and as necessary to adjust to changing legal requirements. The policy was developed as part of Texas State's compliance efforts with respect to various state and federal non-discrimination laws, including Title VII and Title VI of the Civil Rights Act of 1964, the Rehabilitation Act, the Americans with Disabilities Act, the Age Discrimination in Employment Act, Chapter 21 of the Texas Labor Code, and USSERA. When developing, interpreting, and applying this policy, OEO aims to do so consistent with these relevant legal standards.

4. Texas State is currently in the process of revising the Prohibition of Discrimination in accordance with its biannual review schedule (initiated in October 2022). Such changes will include minor process modifications, revisions to ensure that the policy language accurately reflects the processes actually utilized by OEO, and changes to the definition of "harassment" aimed at eliminating unnecessary verbiage and clarifying the standard for a policy violation. I anticipate that a revised version of the policy will become effective before the Fall 2023 semester.

5. OEO's process for handling complaints of potential discriminatory harassment violations starts with receiving a written complaint, typically via the online portal available on OEO's website. I review each complaint (which may include conducting an initial interview with the complainant) and make a determination about whether to initiate a disciplinary process under the policy. OEO dismisses complaints where there is insufficient information to proceed with an investigation (i.e., there is no respondent identified) or where the facts alleged in the complaint, even if true, could not constitute a policy violation. Only if I determine that the facts as alleged could plausibly give rise to a policy violation does OEO notify the respondent and initiate an investigation (or informal resolution process, if both parties agree to informal resolution). Following an investigation, I make a determination about whether a policy violation occurred. If I find a student has violated the policy, I will refer the violation to the Dean of Student to recommend sanctions.

6. Based on my personal knowledge and a review of Texas State records going back to 2017, OEO has received 28 complaints against students alleged to have violated the prohibition on discriminatory harassment.

7. OEO administratively dismissed all but one of these complaints without notifying or engaging the respondent. Only one discriminatory harassment complaint alleged against a student was investigated. This complaint stemmed from a personal dispute between the student respondent and a Texas State employee that resulted in verbal altercations during which the student allegedly made homophobic insults toward the employee and disparaging comments about her appearance. The investigation resulted in a finding of no violation.

8. In evaluating whether facts alleged in a complaint should give rise to a disciplinary process, I rely on the definition of discriminatory harassment and the parameters set forth in the policy. The policy standard for discriminatory harassment includes several elements, all of which must be met. These include that the conduct (or speech) must be (1) unwelcome; (2) severe or pervasive; (3) directed at an individual or group of individuals; (4) interfere with that/those individuals' work performance or ability to participate/benefit from the educational program or activity; (5) whether the conduct meets these standards must be judged both subjectively AND objectively; and (6) the context in which the conduct occurred must be taken into consideration ("totality of the circumstances").

9. Pure speech that is merely offensive or controversial does not meet the definition of discriminatory harassment. Though OEO has occasionally received complaints about student speech expressing controversial, unpopular, or offensive viewpoints, it has not initiated an investigation or disciplinary process in such circumstances because such incidents are not within the scope of the policy.

10. For example, OEO received a complaint alleging a student violated the Prohibition on Discrimination by making comments in the classroom calling transgender people "pedophiles," showing up to a panel discussion wearing a "Make America Great Again" tee shirt knowing the panel consisted of individuals with gender-fluid identities, and repeatedly posting "dehumanizing, discriminatory, and transphobic" comments on the public class blogs under the alias "just a conservative student at a liberal college." Based on these allegations, OEO declined to engage the respondent or initiate any investigation because such comments were not " sufficiently severe or pervasive;" they were not directed at one or more individuals (even though some listeners identified as transgender); and, as judged by a reasonable person, the comments could not have interfered with the complaining party's work performance or have created a hostile work or educational environment, especially considering the educational context in which the comments occurred and the relationship of the complaining party (instructor) to the respondent (student). The student respondent was never notified or engaged by OEO. However, OEO did engage the complaining party to ensure no retaliatory actions were taken against the student respondent on account of her speech and to recommend methods for effectively facilitating discussions on controversial topics.

11. OEO has similarly dismissed other complaints about student speech without ever engaging the respondent. For example, OEO has dismissed complaints alleging the following: a student stated that immigrants were "good for nothing;" a student commented that she "hates white people" and that there were "too many Mexicans on campus;" and a student's series of homophobic comments on social media to the effect of "gay guys having sex and playing with their nipples. I wanna throw up and "being gay is a sin." The complained of conduct in these cases, even if determined to be true, failed to meet all the required elements to constitute a policy violation.

12. I have reviewed the declarations of Students A, B, and C. The speech in which they wish to engage does not fall within the definition of harassment and would not subject them to investigation or discipline under the Prohibition of Discrimination. Specifically, the speech

is not "directed at an individual" nor does it, from an objective perspective, have the potential to interfere with any individual's ability to participate in Texas State's education programs. Students A, B, and C state they wish to "talk frequently and repeatedly" on controversial issues and suggest that such conversations will be "heated, passionate, and targeted." While it is conceivable that their desired speech may draw offense or cause discomfort for some listeners, an individual's subjective feeling of offense or discomfort—without more—is insufficient to subject a student to discipline or process under the policy.

13. I have also reviewed the attachments Speech First submitted with its Motion for a Preliminary Injunction. None of the referenced incidents that allegedly occurred at Texas State resulted in an OEO complaint, investigation, or adjudication based on student speech, nor did the speech involved in those incidents implicate the definition of discriminatory harassment under the Prohibition of Discrimination.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: July 5, 2023

*Alexandria Hatcher*
Alexandria J. Hatcher