FILED
June 05, 2025
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY: ___Christian Rodriguez___
DEPUTY

# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit
**FILED**
May 14, 2025
Lyle W. Cayce
Clerk

---

No. 23-50633

---

SPEECH FIRST, INCORPORATED,

*Plaintiff—Appellant*,

versus

BRIAN MCCALL, *in his official capacity as Chancellor of the Texas State University System*; KELLY DAMPHOUSSE, *in his official capacity as President of Texas State University*; ALEXANDRIA HATCHER, *in her official capacity as Director of the Office of Equal Opportunity and Title IX for Texas State University*; KEN PIERCE, *in his official capacity as Vice President for Information Technology for Texas State University*; DANIEL OWEN, *in his official capacity as Chief Information Security Officer for Texas State University*; EARL C. AUSTIN, *in his official capacity as a member of the Texas State University System Board of Regents*; GARRY CRAIN, *in his official capacity as a member of the Texas State University System Board of Regents*; ALAN L. TINSLEY, *in his official capacity as a member of the Texas State University System Board of Regents*; CHARLIE AMATO, *in his official capacity as a member of the Texas State University System Board of Regents*; SHELIA FASKE, *in her official capacity as a member of the Texas State University System Board of Regents*; DIONICIO FLORES, *in his official capacity as a member of the Texas State University System Board of Regents*; STEPHEN LEE, *in his official capacity as a member of the Texas State University System Board of Regents*; WILLIAM F. SCOTT, *in his official capacity as a member of the Texas State University System Board of Regents*; GABRIEL WEBB, *in his official capacity as a member of the Texas State University System Board of Regents*,

*Defendants—Appellees*.

---

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:23-CV-411

_____

Before HO, DUNCAN, and OLDHAM, *Circuit Judges*.

JAMES C. HO, *Circuit Judge*:

"Education should not be intended to make people comfortable; it is meant to make them think." COMM. ON FREEDOM OF EXPRESSION, UNIV. OF CHICAGO, REPORT OF THE COMMITTEE ON FREEDOM OF EXPRESSION (2015) (quoting President Hanna Holborn Gray).

But according to Speech First, Texas State University has adopted a harassment policy that reflects the opposite principle—and thus conflicts not only with basic pedagogical principles, but also the First Amendment.

Rather than welcome debate, the University prohibits "unwelcome verbal" or "written . . . conduct." The policy does not define what is "unwelcome," nor what constitutes "verbal" or "written" "conduct." But it appears to forbid speech that some individuals or groups could find uncomfortable—namely, speech about "race, color, national origin, age, sex, religion, disability, veterans' status, sexual orientation, gender identity, or gender expression" that some "reasonable person" could find "offensive" or "hostile."

Speech First contends that this policy will be used to target politically disfavored speech on sensitive topics like abortion, immigration, racial preferences in educational admissions, and transgender ideology. So it brought this suit challenging the policy under the First Amendment.

The district court agreed with Speech First's constitutional concerns. The court noted that Texas State had a "real problem," and that the policy had "critical First Amendment issues," because it would stifle "unpopular opinions" and prevent "students from providing their viewpoint to other

2

students." The court even went so far as to say the policy would create "a communist society." In sum, Texas State was "going to lose" on the merits.

But the district court nevertheless refused to issue a preliminary injunction. Instead, the court pressured Texas State officials to amend the policy. University officials vigorously defended the policy before the district court—and continue to do so to this day. But counsel for the University eventually relented and reluctantly amended its policy. The district court then dismissed Speech First's motion as moot.

We disagree with the ruling below that the University's change of policy renders the request for a preliminary injunction moot.

To begin with, "[m]ere voluntary cessation of allegedly illegal conduct does not moot a case; if it did, the courts would be compelled to leave the defendant free to return to his old ways." *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 n.10 (1982) (cleaned up and citation omitted). So "[t]he test for mootness in cases such as this is a stringent one." *Id.* (citation omitted). A case becomes moot due to the voluntary cessation of the defendant only if "subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Id. See generally Tucker v. Gaddis*, 40 F.4th 289 (5th Cir. 2022).

This case falls far short of this "stringent" standard. In fact, Texas State didn't voluntarily cease at all—it ceased only in response to judicial pressure. We accordingly vacate and remand for the district court to consider the motion for preliminary injunctive relief in the first instance.

## I.

Speech First is a national membership organization that represents students at Texas State University who wish to voice their perspectives on abortion, immigration, the use of race in educational admissions,

homosexuality, and gender identity. Two students believe that abortion and illegal immigration are wrong, that it's racist to take race into account in educational admissions, and that the "gender spectrum" is fictional. A third student agrees with these views and additionally believes that marriage is between a man and a woman. All three students want to engage in "lively, fearless debate and deliberation" with their classmates on these topics. But they fear that they will be disciplined under Texas State's harassment policy. So they reluctantly self-censor.

Accordingly, Speech First filed this suit against various Texas State officials challenging the University's harassment policy under the First Amendment.

Speech First moved for a preliminary injunction. The district court held two hearings on the motion. At the first hearing, the district court repeatedly acknowledged that the policy violated the First Amendment. But the court was also "very sympathetic to the University." So it insisted that Texas State amend the policy. The University eventually, and reluctantly, agreed.

At the second hearing, the district court indicated that Speech First's motion for a preliminary injunction was moot, now that the University had amended the policy. Speech First maintained that its motion was not moot, for three reasons: The University (1) only amended its policy because the court insisted that it did so; (2) could easily return to its old policy once the litigation ended; and (3) doggedly defended the old policy as consistent with the First Amendment.

The district court subsequently issued an order implying that Speech First's motion for a preliminary injunction was moot. It then went on to conclude—unprompted—that the amended policy should not be preliminarily enjoined. Speech First timely appealed. *See* 28 U.S.C. §§ 1292(a)(1), 1331.

4

## II.

Speech First raises two arguments on appeal. First, it contends that its preliminary injunction motion isn't moot. Second, it asks this court to enjoin the old policy now, rather than remand for further proceedings. For its part, Texas State insists that Speech First lacks standing. We take each argument in turn, beginning with standing.

### A.

Texas State argues that Speech First lacks standing to challenge its policy, because the policy doesn't actually prohibit the students from saying what they would like to say, and there's no substantial threat of future enforcement. We disagree. In *Speech First, Inc. v. Fenves*, 979 F.3d 319, 329–38 (5th Cir. 2020), this court concluded that Speech First had standing to sue on behalf of students challenging a speech code at the University of Texas at Austin. We see no reason to reach a different conclusion here.

### B.

We agree with Speech First that the district court erred in denying its preliminary injunction motion as moot—a determination we review de novo. *See*, *e.g.*, *Tucker*, 40 F.4th at 292.

"Article III of the Constitution grants the Judicial Branch authority to adjudicate 'Cases' and 'Controversies.'" *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 90 (2013) (quoting U.S. CONST. art. III, § 2). And "an actual controversy must exist not only at the time the complaint is filed, but through all stages of the litigation." *Id.* at 90–91 (quotations omitted). "A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of

Article III—when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Id.* at 91 (quotations omitted).

Texas State contends that the request for a preliminary injunction is moot because the University has voluntarily amended the challenged policy.

To prevail on this theory, however, the University must meet a "stringent" standard. *Aladdin's Castle*, 455 U.S. at 289 n.10. To begin with, "[m]ere voluntary cessation of allegedly illegal conduct does not moot a case; if it did, the courts would be compelled to leave the defendant free to return to his old ways." *Id.* (cleaned up). The University must additionally show that "subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Id.*

The University's mootness theory fails on multiple levels. For starters, University officials didn't voluntarily cease their challenged conduct—they backed down only because the district court pressured it to do so.

And even assuming that the doctrine of voluntary cessation applies in this case, Texas State is unable to meet that doctrine's "stringent" standard. Recall that, in *Fenves*, we adopted a three-factor test for determining whether a university has voluntarily ceased enforcement of a challenged speech code in a manner sufficient to render the dispute moot. *See* 979 F.3d at 328 (citing *Speech First, Inc. v. Schlissel*, 939 F.3d 756, 767–70 (6th Cir. 2019)). We concluded that the dispute was not moot based on "(1) the absence of a controlling statement of future intention; (2) the suspicious timing of the change; and (3) the university's continued defense of the challenged policies." *Id.*

Following *Fenves*, we find that all three factors cut against Texas State and preclude a determination of mootness.

First, "the University has not issued a controlling statement of future intention." *Id.* Here, as in *Fenves*, Texas State represented to the court that

it will not revert to its old policy. *See id.* But here, as in *Fenves*, the University has presented no sworn testimony to that effect. *See id.* at 328–29. Moreover, here, as in *Fenves*, there's "no evidence" that Texas State's statements to the court will indeed "control[] whether the University will restore the challenged [policy]" "during or after" the "tenure" of the University's present leadership. *See id.* at 329.

Second, the amendment of Texas State's policy was suspiciously timed. *See id.* The old policy was on the books well before Speech First sued. Here, as in *Fenves*, "the[U]niversity changed its policies after the complaint was filed." *Id.* In fact, in this case, the University amended its policy only in response to judicial pressure. So we reach the same conclusion here as we did in *Fenves:* "The University does not explain the expedient timing of the policies' removal." *Id.* (cleaned up).

Finally, here, as in *Fenves*, "the University is still defending the legality of its original policies." *Id.* Texas State officials vigorously defended their policy before the district court. And they continue to do so to this day.

Accordingly, the motion for a preliminary injunction is not moot.

## C.

Having overcome mootness, Speech First next asks us to take up its preliminary injunction motion now. We decline that invitation and instead leave the matter of a preliminary injunction to the district court in the first instance, just as we did in *Fenves*. *See id.* at 338 ("Because the district court did not move to the merits, . . . we must remand to the district court for reassessment of the preliminary injunction.").

\* \* \*

We vacate and remand for the district court to consider the motion for preliminary injunctive relief.